Day, C. J.
The original case was a proceeding in the court of common pleas to contest the validity of the last will of Mary Mc-Clelland, deceased, upon three grounds: 1. That at the time of ex- *288 ccuting the will she was not of sound mind and memory; 2. That she was fraudulently induced to make the will; 3. That the will was procured by undue influence of the defendants upon the testatrix.
The issues joined by the parties upon these grounds were tried to a jury, and a verdict was rendered in favor of the defendants, sustaining the will.
The testimony is not fully set forth in the bill of exceptions; it, is, therefore, to be presumed that the finding of the jury was, under the charge of the court, warranted by the evidence.
The only errors insisted on here arise upon exceptions taken by the plaintiffs to the refusal of the court to charge the jury as requested by them, and to the charge as given.
*The plaintiffs submitted to the court twenty-one propositions in writing, which they requested the court to give in its charge to the jury.
It is stated in the record that “the court refused to charge as requested, except as stated ” in the charge given to the jury; and that the plaintiffs excepted to the “refusal to charge as requested,, and to the charge, so far as the same is contrary to said request.”
The charge and the propositions submitted by the plaintiffs are fully set forth in the bill of exceptions, but no reference is made in the charge to any one of the propositions; so that it is not sj>ecified, in the record, which one of the propositions the court refused to give as requested. This is left to be discovered, by seeing what part of the plaintiffs’ requests were not embraced in the charge given. It will be seen, moreover, that the plaintiffs excepted to the charge so far only as the court omitted to adopt the written propositions submitted by them, and so far as the charge was contrary thereto.
It is not deemed necessary, for the purpose of presenting the-questions made by the exceptions, to recite here said propositions or the charge in full. Suffice it to say, that most of the propositions were substantially given in the charge to the jury, as requested. This does not seem to bo strenuously controverted by the counsel for the plaintiffs, except as to the propositions numbered from sixteen to twenty, inclusive. Indeed, the whole controversy arising out of the neglect of the court to charge as requested, and upon the charge as given, may be fairly presented by stating these five propositions, and the charge relating to them. The propositions, .are as follows:
*289 “ 16. If, previous to the will being made, John McClelland, or’ any person acting in concert with him, took advantage of imperfect, though not absolutely unsound judgment, on the part of the testatrix, and, by advice known by them to be false, induced her to believe that she owed to Erastus Jacobs no duty as a wife, and she made the will under the continued influence of that persuasion, the will is void.
“ 17. That, for this purpose, it makes no difference whether it relates to matters of fact merely, or whether it related to *matters of judgment only, provided it related to matters about which she, in her imperfect condition of judgment, might be, and actually was, misled by the advice.
“ 18. If, at the time of making the will in question, Mary Jacobs, the testatrix, from false advice knowingly' given by John Mc-Clelland, or by any other person acting with him, believed that Erastus Jacobs was not Iter lawful husband, when in fact he was, and that John McClelland was her lawful husband, when in fact he-was not, the will is void.
“ 19. It makes no difference whether the false advice thus given was in relation to some matter of fact or in relation to some matter of law, concerning her relation to Jacobs and McClelland, provided she, being then possessed of impaired powers of judgment, believed the advice to be true, and acted accordingly. .
“ 20. If a man knowingly and wrongfully marries and cohabits in a state of adultery with a woman who is the lawful wife of another man, and whose husband has not forfeited his claims to her comfort and society, and, by the influence of such marriage and cohabitation, procures a will from her in his favor, and disinheriting her real husband, that will is void for illegal influence.”
It is to be observed, that these propositions make no allowance for any other facts or circumstances which might modify the assumed facts, but assert that the facts assumed would, under any circumstances, invalidate the will.
Under the 16th proposition, it is assumed that it would make no difference when, or for what purpose, the testatrix was induced to believe that she owed to Erastus Jacobs no duty — no matter if it was for a purpose having no reference to a disposition of her property ; still it is assumed that if the advice was ever given for any purpose, and the false belief continued, the will is void, although the advice had no effect whatever in producing the will.
*290 Under the 17th proposition, it is claimed that the will would be void if the testatrix was misled by the false advice, without assuming that she was thereby induced to make the will, or that such advice had the least influence on the testamentary act. Indeed, these two propositions taken together, ^assume that, if the testatrix was, at any time and for any purpose, misled by the false advice of McClelland as to her duty to Jacobs, and remained under such false impression when the will was made, though it had no relation thereto and in no way tended to produce it, still, the will was void.
The same may be said, substantially, as to the 18th and 19th propositions. In the 19th, which is the most explicit, it is not assumed that, in acting upon the false advice, she did so in relation to the will.
It is undoubtedly well settled, that, to invalidate a will for fraud or undue influence, it must appear that tl*e fraud or undue influence had some effect “upon the testator, in producing the very act of making his will.” Redf. on Wills, 516, 524, 525, 527.
But, however this may be, the most that can be claimed of these four propositions is, that they are based on that kind of undue influence which amounted to fraud upon the testatrix. This is the gist of them; and upon a fair construction of the charge, so far as they tended to induce the will, they were substantially given to the jury. It is difficult, therefore, to see wherein the plaintiffs were not permitted to have all the benefit of these propositions to which they were entitled.
Upon this point, the court charged the jury: “ To inquire whether any fraud or misrepresentations were resorted to to induce the execution of this will. If such fraud was exercised, then it would, however slight, destroy the validity of the will; that is, if it was sufficient to and has, in your judgment, tended to induce the execution.”
Here the court, in reply to these four requests, told the jury, that if “ any fraud or misrepresentations were resorted to to induce the execution of the will, . . . however slight, . . . if it tended to induce the execution ” thereof, the will was void.
If these requests are construed as relating to the act of the testatrix in making the will, then the plaintiffs had the fall benefit of them in the charge. In that case, the record does not show affirma *291 tively that they were refused.by the court, *or that they are embraced in the exceptions taken by the plaintiffs.
But the point that seems to be chiefly relied on by the plaintiffs, is made on the 20th proposition. Upon the facts there assumed,- it was claimed, as a presumption of law, that the will was produced by illegal and, therefore, undue influence. The court did not accede to this proposition, but left the question of undue influence to be determined by the jury, under the following instructions relating to this and other propositions:
“Inquire whether, through the exercise of force or by fear produced, or, in any manner, such an influence was exerted over her as to induce her to make a disposition of her property, contrary to her own will and inclinations; or whether such an undue and overruling influence was exercised upon her mind, as to control or overpower her own inclinations and judgment, or induce her, without or contrary to her own intention and will to execute the paper: if either of these propositions are found in the affirmative, it would defeat the will.”
Construing the charge strongest against the plaintiffs, it would seem that the court intended to be understood as holding the law to be, that, in the absence of fraud, no matter by what influence a testator may be exercised, so long as it does not overpower his inclinations and judgment, and induce a disposition of his property contrary to his own wishes and desires, his will can not be invalidated for undue influence. Indeed, it is not denied but that the charge, as applied to ordinary cases, may be sustained by both reason and authority; but it is claimed, that a distinction is to be taken between influences that are lawful and those that are unlawful.
The gist of the claim is, that the will was void because it was induced by influences growing out of an unlawful relation.
No matter for what reason the testatrix m.ay have been abandoned by her husband, or why she may desire to disinherit him and her kindred, or what obligations may have arisen from the unlawful relation; no matter if the will was made without any influence of the devisee, other than that *which sprung from their association; and, no matter if it was made in accordance with her own inclinations and judgment, still it is assumed that the will would be void.
If no other objection than this was urged against a gift of prop *292 erty between living parties, it would hardly be contended that it would be void. It is difficult to see why a bequest or devise should be subjected to a more stringent rule.
Every will, it may fairly be presumed, is prompted by influences strong enough to induce its provisions; and it would seem, therefore, that the most that ought to be claimed from such influences, in the contest of a will, is, to have them submitted to the jury, to enable them to determine whether the testator was misled or so influenced thereby as to affect his own free choice and judgment in the disposition of his property.
The power to make a will is granted, by the statute, to “ any person of full age and sound memory;” and, under its provisions, the will is to be admitted to record as valid, when “ duly attested and executed, and the testator, at the time of executing the same, was of full age and sound mind and memory, and not under any restraint.” S. & C. Stat. 1615, secs. 1, 15.
Restrictions are imposed upon none, but all are alike left to the exercise of their own free wills and inclinations in the disposition of their property. The power thus given to dispose of property does not depend upon the disposition made thereof, nor is it restricted to those who may employ it only for just and wise purposes; but all upon whom the right is conferred may use it without “any restraint.” Indeed, it is contemplated by the statute that this is the only way in which it can be exercised. Freedom from restraint is essential to the validity of a will. So careful is the law in this respect, that it will not uphold a will that has been induced by restraint upon the testator, whether in the form of fraud practiced upon him, or any other influence that destroys the free exercise of his own will. Redf. on Wills, 524, 527.
It would be inconsistent with the right conferred by the statute, and with the spirit of the construction it has hitherto received, to sanction restraints upon a testator, based alone *on the character of the motives or causes that may have induced any disposition of his property that he may make while in the free exercise of his own inclinations and judgment. He may give his property to whomsoever he pleases, and his motives or reasons therefor, so long as he is “not under any restraint,” are matters of his own conscience, for which he is not accountable to the law. His will; executed in conformitv to the statute, if it be his own, and not in *293 any sense the will of another, can not be invalidated, however much its provisions may be disapproved by others.
It is claimed, in the proposition under consideration, that the will, upon the facts therein assumed, would be void for “illegal influence.” In the solution of the question made by this proposition, much of the difficulty disappears when we consider what “influence,” as applied to the invalidation of wills, is “illegal.”
Every will, as before remarked, is the result of influences strong enough to produce it. Since, then, it is the policy of the law to secure to every one the right to dispose of his property in accordance with his individual will, that influence alone is illegal which places the freedom of a testator’s will under some kind of restraint. If this be so, it follows that it matters not what may be the origin or character of any influence operating upon a testator, if it does not place him “under any restraint.” It would seem to follow, also, that it would be equally immaterial how an individual may have acquired an influence over a testator, unless such influence is exerted ina manner that tends to restrain the free exercise of his will in the disposition of his property.
It is claimed in this proposition, that the influence that produced the will was illegal only because it sprung from an unlawful relation. If this be so, then the principle would be equally applicable to any other unlawful relation, and would destroy a will made under influences springing therefrom, although the testator, without being placed under restraint, could not be persuaded to make a will otherwise than as prompted by such influences. However reprehensible such influences may be, if a testator voluntarily chooses to be actuated by them, it is a privilege he may enjoy under the Haw that secures to every one alike the right to dispose of his property without restraint upon his own judgment and conscience.
It is undoubtedly well settled that a will can not be invalidated because it was produced by influences springing from a lawful marital relation, unless such influence has been unduly exerted. The influence arising from an unlawful marital relation may be as strong as that of the other; but, unless it impairs, more than the other, the free exercise of the testator’s will, it is difficult to see how the influence arising from the unlawful relation is necessarily such undue influence as will invalidate a will, while that of the other' will not. It would seem,- upon the principles already stated, *294 that the question would be essentially the same in either case— whether the influence had been, in fact, exerted in restraint of the testator’s will.
•However justly an adulterous- marital relation may be reprobated, it by no means follows that every will, produced by influences arising from that relation, is tainted with such turpitude that, to uphold it, would “ do violence to the morality of the law.” This is the theory upon which the claim of the plaintiffs rests. But the moral test will not in all cases avail. If the principle be correct, it makes no difference which party makes the will: whether the devise be from the woman to the man, or the man to the woman, it would be equally void.
It would be easy to suppose cases where considerations of moral obligation, as well as that of public duty, would require a man to make suitable provision for a woman with whom ho had sustained this relation. In such cases it would do no violence to the morality of the law to sustain such provision, though it be made by will, and induced solely by influences springing from the unlawful cohabitation.
It may, however, be admitted that the influences growing out of an unlawful marital relation do not stand, and should not be permitted to stand, upon an equal footing with those coming from the lawful relation; but the question recurs, whether the difference is in matter of law or of fact. Tf it *be the former, then every will induced by an unlawful relation is void, though the testator might not have been “ under any restaintbut this, it has been shown, is contrary to the general policy of the law. If it be the latter, then the proof of the unlawful relation should go, with the other evidence, to the jury to enable them to determine the question of undue influence.
We think this would be in accordance with the law, and, in general, best subserve the ends of justice. We have not been furnished with authorities, nor do we see any sufficient reason to warrant us in making this class of cases an exception to the general principles relating to the validity of wills.
It is true that the position of the counsel for the plaintiffs is strongly supported obiter in the able opinion delivered in the casa of Dean v. Negley, 41 Penn. St. 312. The point there ruled, however, went to the extent only that proof of the making a will under, and in the direction of, an unlawful relation, like that in this case, *295 was such evidence of undue influence, “ that it may justify a verdict against the validity of the willand it was held, therefore, that it was error to exclude it from the jury. That the same court must hold the question to be one “ of fact merely,” and not “ a presumption of law,” is shown in a still more recent case, where it was declared that “ undue influence, to avoid a will, must be such as to overcome the free agency of the testator at the time the instrument was made.” Eckert v. Flowery, 43 Penn. St. 46; Redf. on Wills, 534.
The propositions which the counsel for the plaintiffs requested the court to give in its charge to the jury, although separately numbered, were, in fact, many of them, a connected series of propositions dependent one upon another, some of which, we have shown, the court could not properly give; other independent propositions were properly refused, as has been shown; and the remaining ones were embraced in the charge. There was, therefore, no error in refusing to charge as requested.
For the reasons already stated, we think that there was no error in the charge as given to the jury by the court of coiqmon *pleas. It follows that the district court rightfully affirmed the judgment of that court; and that the judgment of the district court must therefore be affirmed.
White," Welch, Brinkerhoee, and Scott, JJ., concurred.